1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11

DAVID LESLIE MANNING, Jr.,

Case No.: 16cv0525 JAH (JMA)

12

Petitioner,

13

v.

**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

14

STIRLING PRICE, Warden, et al.,

15

Respondents.

16
17

## I.    <u>INTRODUCTION</u>

18

Petitioner David Leslie Manning, Jr., a state prisoner proceeding pro se, has filed a

19

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet.")

20

challenging his convictions in San Diego Superior Court case no. SCD239475 for

21

stalking. (Pet., ECF No. 1.)[1]  Manning raises four grounds in the Petition.

22

The Court has read and considered the Petition, the Answer and Memorandum of

23

Points and Authorities in Support of the Answer ("Answer") [ECF No. 11], the

24

lodgments and other documents filed in this case, and the legal arguments presented by

25

/ / /

26
27

---

28

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system, except for lodgments.

1  both parties.  For the reasons discussed below, the Court **RECOMMENDS** the Petition

2  be **DENIED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

4          This Court gives deference to state court findings of fact and presumes them to be

5  correct; Petitioner may rebut the presumption of correctness, but only by clear and

6  convincing evidence.  *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*,

7  506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences

8  properly drawn from these facts, are entitled to statutory presumption of correctness).

9  Because Manning pleaded guilty in state court, this Court will recite the facts from the

10  preliminary hearing and probation report.

11         In 2008, Kerry Fulcher's daughter escaped from a mental institution.  (Lodgment

12  No. 1 at 4.)  Manning contacted Fulcher because he had been in contact with Fulcher's

13  daughter, was worried about her, and wanted to bring her home.  (*Id*.)  Sometime in 2009,

14  Fulcher's daughter broke off a dating relationship with Manning and Manning began

15  stalking and harassing Fulcher's daughter and the Fulcher family.  (Lodgment No. 3 at

16  0010-11.)  In 2010, Manning was convicted of violations of California Penal Code (Penal

17  Code) §§ 422 (criminal threats) and 646.9(a) (stalking).  Manning was sentenced to 16

18  months in state prison and the Fulchers obtained a restraining order against Manning.

19  (Lodgment No. 1 at 2; Lodgment No. 3 at 10.)

20         In February 2012, Fulcher received a series of voicemail messages from Manning

21  in which Manning use profanity and called Fulcher various unpleasant names such as

22  "piece of shit," "child molester," "scum bag," and "fucking coward."  (Lodgment No. 3

23  at 0011.)  In the last several calls, Manning told Fulcher he was going to "get took off this

24  fucking planet like you fucking deserve," and that all he (Manning) had to do "is just pull

25  the fucking trigger, bro, and turn the fucking gun on myself, dude, and I can blow my

26  fucking brains out, bro, and I can seriously get rid of you, motherfuckers, bro."  (Pet. at

27  39 [transcript of calls].)  Manning also said, "You're gonna fucking die, you piece of

28  shit."  (*Id*. at 43.)  Fulcher contacted law enforcement, and Manning was arrested.

Following his arrest, Manning was arraigned on April 16, 2012, and proceedings were suspended pursuant to Penal Code § 1368.[2]  (Lodgment No. 3 at 0046.)  Manning was found incompetent to stand trial on June 29, 2012, and was returned to competency on January 9, 2013.  (*Id.* at 0048-51.)

On January 30, 2013, the San Diego District Attorney's Office filed a felony complaint charging Manning with one count of stalking with a court order in effect, a violation of Penal Code § 646.9(b) (count one), and two counts of making a criminal threat, a violation of Penal Code § 422 (counts two and three).  (*Id.* at 0001-4.)  As to count one, the complaint also alleged Manning had been previously convicted of a violation of Penal Code § 422 (a felony), within the meaning of Penal Code § 646.9(c)(1), and had previously been convicted of a violation of Penal Code § 646.9(a), within the meaning of Penal Code § 646.9(c)(2).  (*Id.*)  The complaint also alleged Manning had suffered a prior conviction for which he served a prison term, within the meaning of Penal Code §§ 667.5(b) and 668, had suffered a prior serious felony conviction, within the meaning of Penal Code §§ 667(a)(1), 668, and 1192.7(c), and had suffered a "strike" prior, within the meaning of Penal Code § 667(b)-(i), 1170.12, and 668.  (*Id.*)

/ / /

---

[2] Penal Code § 1368(a) provides as follows:

> If, during the pendency of an action and prior to judgment, or during revocation proceedings for a violation of probation, mandatory supervision, postrelease community supervision or parole, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent.  If the defendant is not represented by counsel, the court shall appoint counsel.  At the request of the defendant or his or her counsel  or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at the point in time.

Penal Code § 1368(a).

A preliminary hearing was held on January 30, 2013.  (Lodgment No. 2 at 0050-51; Lodgment No. 1.)  Manning was held to answer on all counts.  (Lodgment No. 1 at 38.)

On April 15, 2013, Manning entered into a plea agreement in which he pleaded guilty to count one; counts two and three were dismissed.  (Lodgment No. 3 at 0005-08.) The court imposed a stipulated sentence of six years in prison.  (*Id.* at 0005, 0170; Lodgment No. 2.)  Manning filed a notice of appeal and request for a certificate of probable cause on April 1, 2014.  (Lodgment No. 3 at 0040-41.)  Manning filed a petition for writ of habeas corpus in the San Diego Superior Court shortly after that, which was denied because the superior court lacked jurisdiction once the notice of appeal was filed. (Lodgment Nos. 18, 19.)

Manning next filed a petition for writ of habeas corpus in the California Court of Appeal on September 24, 2014.  (Lodgment No. 4.)  In it, he raised the claims he raises in his federal Petition.  (*Id.*)  Then, on November 17, 2014, he filed an appellate brief in his direct appeal, and a supplemental brief on January 5, 2015.  (Lodgment Nos. 5-6.)[3]  The state appellate court directed the Attorney General to submit an informal response addressing the following issues:

> (1) When, if ever, were the transcripts of the taped calls provided to the defense?

> (2) If the transcripts were *not* timely provided to the defense, please address whether the failure to do so violated *Brady v. Maryland*, (1063) 373 U.S. 83 and/or whether there was prosecutorial misconduct.

/ / /

---

[3] Counsel filed an Opening Brief pursuant to the procedures outlined in *Anders v. California*, 386 U.S. 738 (1967) and *People v. Wende*, 25 Cal.3d 436 (1979), which permit appointed counsel to file an appellate brief asking the appellate court to independently review the record to determine whether there are any arguable issues.  (Lodgment No. 5).  Manning was given leave to submit a supplemental appellate brief of his own, in which he raised the same issues he raises in his federal Petition. (Lodgment No. 6.)

16cv0525 JAH (JMA)

(3) If the transcripts *were* timely provided to the defense, please address Manning's claim he was deprived of effective assistance of counsel in light of his claims that:

> (a) the transcripts showed there was an insufficient factual basis to support a conviction for violating Penal Code section 422, as raised in his petition for writ of habeas corpus,

> (b) the transcripts showed there was an insufficient factual basis to support a conviction for violating Penal Code section 646.9, as raised in his petition for writ of habeas corpus.

(Lodgment No. 7.)

After Respondent filed her response and Manning filed a reply, the California appellate court issued an opinion in Manning's direct appeal denying him relief, as well as an order denying his habeas corpus petition. (Lodgment Nos. 10-11.)

Manning next filed a petition for writ of habeas corpus in the California Supreme Court. (Lodgment No. 12.) The California Supreme Court denied that petition with a citation to *In re Dixon*, 41 Cal. 2d 756, 759 (1953). (Lodgment No. 13.)

Manning then returned to the California appellate court by filing another habeas corpus action, which was denied by that court, citing *In re Clark*, 5 Cal. 4th 750, 767 (1993). (Lodgment Nos. 14-15.) He filed another habeas corpus petition in the California Supreme Court on March 14, 2016, which that court denied with a citation to *In re Miller*, 17 Cal. 2d 734, 735 (1941). (Lodgment Nos. 16-17.)[4]

Manning filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on February 16, 2016, and an Amended Petition on April 4, 2016. (ECF Nos. 1, 3.) Respondent filed an Answer on August 24, 2016. (ECF No. 17.) Manning did not file a Traverse.

///

---

[4] Manning also filed a series of habeas corpus petitions in state court in which he raised issues that are not relevant to his current federal case. (*See* Lodgment Nos. 20-25.)

## III.  **DISCUSSION**

Manning raises four grounds in his Petition.  In ground one, he contends the police officer who responded to Fulcher's call to law enforcement about Manning's phone calls falsified his report by removing some of Manning's words and adding his own words in the report.  Manning also claims counsel was ineffective for failing to present this evidence. (Pet. at 5.)  In ground two, Manning alleges this false evidence was used against him at his preliminary hearing, and that trial counsel was ineffective when he failed to challenge that evidence.  (*Id.* at 7.)  In grounds three and four, Manning contends there was insufficient evidence presented to support every element of the crimes he was accused of, and that trial counsel was ineffective for failing argue this point.  (*Id.* at 8-10.)

Respondent argues Manning's claims are procedurally defaulted.  (Answer at 11-13.)  Respondent also argues Manning's claims are not cognizable under *Tollet v. Henderson*, 411 U.S. 258 (1973) because they concern matters that occurred before his guilty plea.  (*Id.* at 13-17.)  In any event, Respondent contends, Manning's claims are meritless.  (*Id.* at 17-20.)

A.  *Standard of Review*

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).  Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.  *See*

/ / /

1    *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th

2    Cir. 2004).

3        A federal habeas court may grant relief under the "contrary to" clause if the state

4    court applied a rule different from the governing law set forth in Supreme Court cases, or

5    if it decided a case differently than the Supreme Court on a set of materially

6    indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant

7    relief under the "unreasonable application" clause if the state court correctly identified

8    the governing legal principle from Supreme Court decisions but unreasonably applied

9    those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable

10   application" clause requires that the state court decision be more than incorrect or

11   erroneous; to warrant habeas relief, the state court's application of clearly established

12   federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75

13   (2003). The Court may also grant relief if the state court's decision was based on an

14   unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

15        Where there is no reasoned decision from the state's highest court, the Court

16   "looks through" to the last reasoned state court decision and presumes it provides the

17   basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S.

18   797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its

19   reasoning," federal habeas courts must conduct an independent review of the record to

20   determine whether the state court's decision is contrary to, or an unreasonable application

21   of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th

22   Cir. 2000) (*overruled on other grounds by Andrade*, 538 U.S. at 75-76); *accord Himes v.*

23   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite

24   Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at

25   8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts

26   [Supreme Court precedent,]" *id*., the state court decision will not be "contrary to" clearly

27   established federal law. *Id*. Clearly established federal law, for purposes of § 2254(d),

28   / / /

16cv0525 JAH (JMA)

means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

B. *Procedural Default*

Respondent contends Manning's claims are procedurally defaulted because the California Supreme Court cited to *In re Dixon*, 41 Cal. 2d at 759 when it denied his habeas corpus petition. (Answer at 11.) The California Supreme Court imposed the *Dixon* bar because Manning filed a petition for writ of habeas corpus following the denial of his direct appeal in the appellate court instead of a petition for review. As Respondent points out, under California procedure, in order to properly raise a claim on direct appeal to the California Supreme Court following a denial by the state appellate court, an appellant must file a petition for review in the California Supreme Court, not a habeas corpus petition. Cal. Ct. R. 8.500, 8.508

The Ninth Circuit has held that because procedural default is an affirmative defense, in order to establish a claim is procedurally defaulted, Respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at issue, Manning must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Manning can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed.

*See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009).) All cases cited by a state court must be independent and adequate to bar federal review of the claims. *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000).

Respondent has pled the existence of an independent and adequate state procedural bar. *See Johnson v. Lee*, 578 U.S. __, 136 S. Ct. 1802, 1806 (2016) (concluding that *Dixon* is an independent and adequate state procedural bar). Manning has not "asserted specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Bennett*, 322 F.3d at 586. His claims are therefore procedurally defaulted unless he can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The cause prong is satisfied if Manning can demonstrate some "objective factor" that precluded him from raising his claims in state court, such as interference by state officials or constitutionally ineffective counsel. *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991). Manning does claim that trial counsel was ineffective for failing to challenge the evidence against him. (Pet. at 5-10.) As discussed below, however, in section III(C) of this Report and Recommendation ("R&R"), the Court concludes counsel was not ineffective; accordingly, this cannot form the basis for a successful showing of cause under *Coleman*. Manning does not allege any other "objective factor" that precluded him from raising this claim, and thus he has not established cause for the default. *McClesky*, 499 U.S. at 493-94.

"Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Manning has not established prejudice resulting from the state supreme court's refusal to address the merits of his claims because, as discussed below in section III(C), his claims are meritless.

Finally, Manning has also failed to demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "a constitutional violation has probably resulted in one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997), the Ninth Circuit held that "actual innocence" means factual innocence, not simply legal insufficiency; a mere showing of reasonable doubt is not enough.[5] Manning has not presented evidence sufficient to establish he is actually innocent of the charges of which he was convicted. Thus, Manning has not satisfied the fundamental miscarriage of justice exception, and the claims are procedurally defaulted. *Schlup*, 513 U.S. at 327.

## C. *Merits*

Even if the claims were not procedurally defaulted, they are meritless. First, as Respondent correctly argues, they are precluded under *Tollet* because they concern matters that occurred before his guilty plea. In *Tollet*, the Supreme Court stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Id*. at 267.

Manning's claims the police reports contained false evidence, the prosecutor presented false evidence at the preliminary hearing, there was insufficient evidence to support the charges, and his attorney was ineffective for failing to challenge these

/ / /

---

[5]  *But see Vosgien v. Persson*, 742 F.3d 1131, 1135-36 (9th Cir. 2014) (stating a petitioner can show "actual innocence" by establishing that, based on subsequent case law, he is not legally guilty of the crimes of which he was convicted).

deficiencies are all "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," and are thus barred by *Tollet*. *Id*.[6]

Moreover, Manning's claims fail on the merits. In claims one and two, Manning contends the police report of the incident contained false information and that it was used against him at the preliminary hearing. (Pet. at 5-8.) He also claims counsel was ineffective for failing to challenge the false information. (*Id*.) Specifically, Manning claims that the police report authored by Officer McSweeney did not accurately document the words spoken on the voice mail and that McSweeney added his own words to Manning's statements. (*Id*. at 27-30.) Manning has attached McSweeney's police report as Exhibits A and B. In the report, McSweeney states the voice mails from Manning contained the following:

> Manning left two phone messages that contained criminal threats, basically stating the following:
>
> #1) Fulcher you are a top notch piece of shit. You are going to rot in hell Fulcher you scumbag. Fulcher you suck you coward. I would love to get you in court. You are a coward. All I have to do is pull the trigger and then turn the gun on myself. I can get rid of you.
>
> #2) Fulcher it's David Manning. You fucking scumbag. Go ahead and call the cops on me I don't give a fuck. You can call my parole agent too I don't give a fuck. Call the cops on me they ain't gonna do shit. Your [sic] gonna die you piece of shit. I'm in Salt Lake City Utah.

(*Id*. at 35.)

/ / /

/ / /

/ / /

/ / /

---

[6] A claim that counsel rendered ineffective assistance by advising his client to plead guilty, or that a petitioner's guilty plea was not voluntarily and intelligently made, are not barred by *Tollet*. *Tollet*, 411 U.S. at 267; *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Manning does not, however, raise such a claim.

Manning has also provided the transcripts of the two voice mail messages as Exhibit C.  (*Id.* at 38-44.)  The transcripts reflect Manning made the following statements:

> [¶] . . . You *are a top notch piece of shit*.  I would love for you call the San Diego County Sheriff's or the fucking local authorities on me, bro, because *I would love to get you in court*, bro . . . . *You are a fucking coward* . . . . I can talk shit, blah, blah, blah, bro, but *all I gotta fucking do is just pull the fucking trigger, bro, and turn the fucking gun on myself*, dude, and I can blow my fucking brains out, bro, and *I can seriously get rid of you* . . . .
>
> [¶] . . . I want you to know, bud, that *you are going to hell* my friend. *You're a fucking scum bag* . . . . *You're gonna die, you piece of shit*.  *Go ahead, call the fucking cops* again, you fucking bitch, fucking faggot. Seriously, dude, call the fucking cops.  *They ain't gonna do shit* . . . . *I'm in Salt Lake City*, by the way, bro . . . .

(*Id.* at 38-43.)

As the above comparison illustrates, McSweeney's summary of Manning's remarks was not inaccurate.  Manning also claims McSweeney left out a significant part of the voice mail when he did not include a portion of Manning's statement about not hurting anyone.  McSweeney quoted Manning as saying, "All I have to do is pull the trigger and then turn the gun on myself."  (Pet. at 35.)  The transcript quotes Manning as saying, "I don't need to hurt nobody.  I can talk shit, blah, blah, blah, bro, but all I gotta do is just pull the fucking trigger, bro, and turn the fucking gun on myself, dude . . . ." (*Id.* at 39.)  While McSweeney did leave out a portion of Manning's statement, the omission does not render the police report "falsified."  Moreover, contrary to Manning's claims, counsel did question victim Fulcher about Manning's statements regarding the gun at the preliminary hearing:

> Q.  The DA asked you about two separate phone calls.  One of which where Mr. Manning made reference to a gun and potentially turning that gun on himself, correct?
>
> A.  Yes.

Q.  And with respect to that phone message, at no point did he tell you that he was going to use the gun on you; is that correct?

A.  He indicated that he was going to take me off of the planet, and there was some rambles in between that.  But take me off the planet.  There's no idea – that I had no idea what he could do – or what he was capable of.

Q.  Fair enough.

Let me ask you.  My question was more precise.  I think it's sort of a semantical issue.  You drew an inference from his statement regarding the gun that he might at some point use a gun.

Is that a fair characterization?

A.  I would say – I would took it as a threat, yes.

Q.  But there was an inference?  He didn't say, I'm going to use a gun on you, or I'm going to shoot you with the gun or anything like that?  He basically made reference to a gun and said that he could always turn it on himself, but he never said I have got a gun I'm going to shoot you or shoot anyone?

A.  He indicated that after taking me off the planet that – and no idea of what he was capable of.  That he would just simply pull the trigger and then turn the gun upon himself.

(Lodgment No. 1 at 18-19.)

Thus, there is no merit to Manning's claims of falsified evidence or ineffective assistance of counsel as he alleges in grounds one and two.  He is not entitled to relief as to those claims.

In grounds three and four, Manning contends there was insufficient evidence to satisfy the elements of the crimes with which he was charged.  (Pet. at 8-10.)  He also contends counsel was ineffective for failing to assert a sufficiency of the evidence claim and for failing to present exculpatory evidence.  (*Id.*)

/ / /

16cv0525 JAH (JMA)

1        In California, felony cases are prosecuted by the District Attorney's office, which

2    files either a grand jury indictment or a complaint.  If a complaint is filed, the case

3    proceeds to a preliminary hearing.  Cal. Const. art. I, § 14; Penal Code § 872.  At a

4    preliminary hearing, the prosecution must present sufficient evidence to establish there is

5    probable cause to believe a crime was committed and that defendant committed it.  Penal

6    Code § 872.  To support its case, the prosecution may present witnesses and evidence.

7    Qualified law enforcement witnesses may also present hearsay evidence.  Penal Code §

8    872(b); Cal. Const. art. 1, § 30(b); *Whitman v. Superior Court*, 54 Cal. 3d 1063 (1991).

9    There is no federal constitutional right to a preliminary hearing.  *Peterson v. California*,

10   604 F.3d 1166, 1169 (9th Cir. 2010).

11       Manning was charged with one count of a violation of Penal Code §§ 646.9(b),

12   stalking, and two counts of a violation of Penal Code § 422, making a criminal threat.  A

13   person commits the crime of stalking when he or she: (1) willfully, maliciously, and

14   repeatedly follows another person, or (2) maliciously harasses another person, and (3)

15   makes a credible threat, (4) with the intent to place that person in immediate fear for his

16   safety or the safety of his or her immediate family.  Penal Code § 646.9(a).  Subdivision

17   (b) of Penal Code § 646.9 states that anyone who commits this offense while there is a

18   valid temporary restraining order or other court order in effect which prohibits the

19   behavior is guilty of a felony and shall be punished by two, three or four years in state

20   prison.  Penal Code § 646.9(b).  A person commits the crime of making a criminal threat

21   when he or she: (1) willfully threatens to commit a crime, (2) which will result in death or

22   great bodily injury to a person, and (3) has the specific intent that the statement is to be

23   taken as a threat.  Penal Code § 422.  No intent to actually carry out the threat is needed,

24   but the threat must be sufficiently "unequivocal, unconditional, immediate and specific as

25   to convey to the person threatened, a gravity of purpose and an immediate prospect of

26   execution of the threat, and thereby causes that person reasonably to be in sustained fear

27   for his or her own safety or for his or her immediate family's safety."  *Id.*

28   / / /

At Manning's preliminary hearing, the prosecution presented the voice mails and the testimony of the victim, Fulcher, and the officer who listened to the voice mails, McSweeney.  As to the Penal Code § 646.9(b) count, the evidence established that Manning called Fulcher and stated "all I gotta fucking do is just pull the fucking trigger, bro, and turn the fucking gun on myself, dude, and I can blow my fucking brains out, bro, and I can seriously get rid of you . . . . You're gonna die, you piece of shit.  Go ahead, call the fucking cops again . . . . They ain't gonna do shit." (Pet. at 38-43.)  Fulcher testified Manning was very agitated and he took Manning's statements as a serious threat, in part due to his prior experience with Manning.  (Lodgment No. 1 at 13-14.) McSweeney testified Manning's tone was hostile.  (*Id.* at 28-29.)  This was sufficient evidence to establish probable cause that Manning maliciously harassed Fulcher by making a credible threat with the intent to place him in fear for his safety.  Penal Code § 646.9(a).  It was also sufficient to establish probable cause that Manning violated Penal Code § 422 twice by willfully threatening to commit a crime that would have resulted in great bodily injury or death to Fulcher, and that Manning specifically intended his statements to be taken as a threat.  Penal Code § 422.  In the first voice mail, Manning stated, "all I gotta fucking do is just pull the fucking trigger, bro, and turn the fucking gun on myself, dude, and I can blow my fucking brains out, bro, and I can seriously get rid of you . . . ." (Pet. at 39.)  In the second voice mail, Manning stated, "[y]ou're gonna die, you piece of shit.  Go ahead, call the fucking cops again . . . ." (*Id.* at 43.)

In addition, counsel's representation of Manning was not ineffective.  To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  He must also show he was prejudiced by counsel's errors.  *Id*. at 694. Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Further, Strickland requires that"[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 686-87. The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  *Id*. at 697.

At the preliminary hearing, counsel cross examined Fulcher in an attempt to establish Manning did not make an "unequivocal and unconditional" threat by getting him to admit Manning did not directly threaten him and that Fulcher "drew an inference" of a threat from Manning's words  (Lodgment No. 1 at 17-19.)  Counsel also attempted to establish any threat by Manning was not "immediate" because he told Fulcher he was in various cities.  (*Id.* at 19.)  In addition, counsel called McSweeney as a witness to bolster these arguments.  (*Id.* at 27-29.)  Based on the weaknesses in the prosecution's case he was able to expose at the preliminary hearing, counsel was able to secure a plea agreement for Manning in which the Penal Code § 422 counts, which qualified as "strikes" under California's Three Strikes law, were dismissed, and Manning would plead guilty only to the Penal Code § 646.9 count, which was not a strike.  (Lodgment No. 3 at 5.)  The plea agreement included a stipulated sentence of six years; Manning was facing a maximum of 18 years and eight months.  Penal Code §§ 18, 422, 646.9(c), 1192.7(c); Lodgment No. 3 at 0001-03.)  Manning has not thus not established either prong of *Strickland*.

## IV.    **<u>CONCLUSION</u>**

The Court submits this Report and Recommendation to United States District Judge John A. Houston under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

/ / /

/ / /

1   **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving
2   and adopting this Report and Recommendation, and (2) directing that Judgment be
3   entered **DENYING** the Petition for Writ of Habeas Corpus.

4   **IT IS ORDERED** that no later than **November 28, 2016** any party to this action
5   may file written objections with the Court and serve a copy on all parties. The document
6   should be captioned "Objections to Report and Recommendation."

7   **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with
8   the Court and served on all parties no later than **December 5, 2016**. The parties are
9   advised that failure to file objections within the specified time may waive the right to
10  raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d
11  449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

12  **IT IS SO ORDERED.**
13  DATED: November 8, 2016

14  _____
     Jan M. Adler
15  +          UNITED STATES MAGISTRATE JUDGE

17

16cv0525 JAH (JMA)